UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY McGOWAN | CIVIL ACTION |
| v. | NO. 12-990 |
| NEW ORLEANS EMPLOYERS<br>INTERNATIONAL LONGSHOREMEN'S<br>ASSOCIATION, AFL-CIO PENSION FUND | SECTION "F" |

ORDER AND REASONS

Before the Court is NOE-ILA Pension Fund's motion to dismiss or, in the alternative, for summary judgment. For the reasons that follow, the defendant's motion for summary judgment is GRANTED.

**Background**

This litigation arises out of a pension fund's alleged improvident termination of a participant's disability retirement benefits and retiree health insurance benefits.

The New Orleans Employers International Longshoremen's Association, AFL-CIO Pension Fund is an employee pension benefit plan as defined by the Employee Retirement Income Security Act of 1974, as amended, Section 3(2)(A)(I), 29 U.S.C. § 1002(2)(A)(I). Pursuant to a Collective Bargaining Agreement for the Port of New Orleans and Baton Rouge area, the Fund was established to provide disability and pension benefits to its member participants. Civil litigation and enforcement "under the terms of the plan" are governed by 29 U.S.C. § 1132. Applicable provisions of the Plan

1

include:

> **1.16 - Disability** means a physical or mental condition that permanently prevents an Employee from working in Employment in the Industry.
>
> **4.1 - Eligibility for Pension Benefits**
> ...
> (f) Disability Pension
> Each Participant who satisfies all of the following requirements is eligible to receive a Disability Pension:
> (1) He must become totally and permanently disabled ("Disabled") as follows:
> > (i) if he earns eligibility due to work under a Collective Bargaining Agreement, he must be Disabled from performing work covered by the Collective Bargaining Agreement applicable to longshoremen;
> ...
> (6) A Disability Pension or pro rata Disability Pension will terminate the happening of any of the following:...(ii) ceasing to be Disabled or engaging in gainful employment other than for purposes of rehabilitation on a nominal wage basis; or (iii) the failure to comply with any other requirements for a Disability Pension. If Disability Pension benefits are terminated, the Board will provide written notice by first class mail or personal delivery to the affected Qualified Pensioner, no later than the first month for which benefits are terminated, setting forth the reasons for termination and an explanation of the right to file a written claim for review under the Plan's Claims and Review Procedures....
> ...
>
> **9.5 - Claims Review Procedure**
> (a) Any claimant whose application or claim for benefits under the Plan has been denied in whole or in part has the right to appeal the determination in accordance with the Claims Review Procedure described in this Section.
> (b) Within 180 days after receipt of an adverse benefit determination for a Disability Claim...the claimant or his representative may appeal the determination by making a written request for review to the Board, stating the claimant's name, the fact that he is appealing the initial determination on the

claim and the basis of the appeal. If a timely written request for review is not made, the initial decision on the claim will be final. If a timely written request for review is made, the claimant may submit written comments, documents, records or other information relating to the claim. The claimant may also obtain, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to his claim, and with respect to appeals involving Disability Claims, identification of any medical or vocational experts whose advice was obtained by the Plan. A document, record or other information is "relevant" to a claim if (i) it was relied upon in making the determination or was submitted, considered or generated in the course of making the determination; or (ii) it relates to the administrative processes and safeguards used to ensure and verify that claim determinations are consistent with the Plan and that the Plan is consistently applied to similarly situated claimants; or (iii) for Disability Claims, it is a statement of Plan policy or guidance concerning the denied benefit without regard to whether it was relied upon.

    The review on appeal will take into account all comments, documents, records and other information submitted by the claimant and relating to the claim, without regard to whether it was submitted or considered in the initial determination. For Disability Claims, no deference will be given to the initial determination. If the initial determination is based in whole or part on medical judgment, the Trustees will consult with a health care professional, with appropriate medial training and experience, who was not consulted in connection with the initial determination and is not a subordinate of any individual who was consulted.

(c) A decision on appeal must be made within a reasonable period of time following the request for review and no later than the first regularly scheduled Board meeting immediately following receipt of the request for review (which must be at least quarterly); however, if the request for review is received within 30 days prior to such meeting and additional time is needed, it will be decided no later than the second regularly

>     scheduled meeting following receipt of the request for review....
> (d) If a claim is denied in whole or in part on review, the notice of the decision on review to the claimant will set forth the following information in a manner calculated to be understood by the claimant: (1) The specific reason(s) for the adverse determination and reference to the specific Plan provisions on which it is based; (2) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and information relevant to the claim and a statement of the claimant's right to bring an action under Section 502(a) of ERISA; and (3) For Disability Claims, any internal rule, guideline, protocol or other similar criterion that was relied upon in making the determination or a statement that it was relied upon and that a copy will be provided free of charge upon request, and to the extent required, a statement regarding the right of the claimant and Plan to voluntary alternative dispute resolution options, such as mediation, and contact information for the local U.S. Department of Labor Office and State insurance regulatory agency.
> (e) A decision on review of any claim made under the Plan, or an initial decision on a claim under the Plan that is not timely appealed, will be conclusive, final and binding on all persons.
>
> **9.6 - Time Limit for Legal Actions**
> In no event may legal action be brought by or on behalf of any individual to receive benefits under the Plan unless the individual or his representative, if any, has first fully complied with and timely exhausted the Claims and Claims Review Procedures under the Plan.  In addition, in no event may legal action be brought to contest or set aside a decision on a claim, initially or upon review, or otherwise to receive benefits under the Plan, unless it is filed in a court of competent jurisdiction within one (1) year following the date of written notice of the decision denying the claim on review or other final decision on a claim.

Section 9.1 provides that "[t]he Plan shall be administered by the Board, acting in its capacity as the Pension Board." Thomas R.

Daniel identifies himself as the Administrator for the NOE-ILA Pension Fund; the Plan itself identifies him as the Fund Administrative Manager.

Troy McGowan, a longshoreman covered by the Plan of benefits administered by the Fund, qualified for disability effective December 2003 after he was injured while winding up the landing gear on a container. As a result of his disabling injury, McGowan settled with his stevedore employer pursuant to the Longshore and Harbor Worker's Compensation Act; the settlement was approved on July 16, 2002. In the settlement agreement, McGowan stipulated that he was permanently disabled from returning to work on the Waterfront.

Years later on April 18, 2011 McGowan and Plan Administrator Daniel discussed that, if McGowan engaged in gainful employment, then disability pension and health benefits would be terminated.[1] Two days later, Daniel wrote McGowan:

> This is to confirm our discussion of April 19, 2011 concerning the termination of your Disability Retirement pension benefit payments and your retiree health insurance benefits effective April 30, 2011. You called me on April 18...to inquire about returning to work as a longshoreman. I asked you if you were no longer disabled and you replied that you could perform longshoreman work and that you were currently working construction at a job

---

[1] In his Response to List of Uncontested Material Facts, McGowan "admit[s]" this fact; in his complaint, however, he alleges that he contacted Daniel regarding the hospitalization of his newborn child "and was confronted by Mr. Daniel with an allegation that he worked at Lowe's and therefore should be terminated from [receiving] benefits."

5

site at Lowes. You also said you worked in the longshore industry for several employers during the 2009/2010 labor contract year.

You qualified to receive a Disability Retirement pension benefit on December 1, 2003 from the Pension Plan because you were deemed disabled from performing work as a longshoreman by the Fund's physician (see Transcription from Concentra Medical Centers enclosed). The Trustees approved your application for a Disability Retirement benefit on January 1, 2004 to be effective December 1, 2003 in the gross amount of $435.00 per month.

The Plan provides that Disability payments will end if you cease to be Disabled or if you return to work other than for the purpose of rehabilitation at a nominal wage (see pages 15 and 16 of the enclosed Summary Plan Description booklet). Since you are no longer disabled from performing longshoreman work, your Disability retirement benefit payments will end on April 30, 2011. Your final payment was April 1, 2011. You may retire with a reduced Early Retirement benefit between the ages of 51 and 62 or you may defer your retirement date until age 62 at which time you will receive your full Vested Retirement benefit.

You and your dependents' retiree health insurance benefit will also terminate on April 30, 2011 because you must be retired in order to qualify to receive those benefits.

Your post-appeal rights are set forth on pages 36-39 of the enclosed Summary Plan Description booklet. Please note your right to pursue legal action under Section 502(a) of ERISA. The limitation period is one (1) year from today.....

The Fund received no written appeal advising it that McGowan contested the ending of the disability benefits.[2]

Thereafter, on September 12, 2011, McGowan's then-attorney, Scott Bickford, wrote to the Fund that he was assisting McGowan in

---

[2]McGowan suggests that he contests this assertion, and simply says "see exhibit A." Buried in those administrative hearing meeting minutes from August 17, 2012 is a position advanced by McGowan and his counsel that McGowan called Mr. Daniel after receiving the April 20 letter; McGowan suggests that his phone call was his intention to appeal.

6

returning to work as a longshoreman. Bickford described McGowan as "re-certified in Hazmat training, lift truck operations, heavy truck operations and completed the classroom and written test for top load operations."

On February 9, 2012, nearly 10 months after the April 20 letter confirming an end to McGowan's disability benefits, McGowan, represented by new counsel, William Vincent, sought to continue eligibility for disability benefits.[3] On March 1, 2012 Vincent again wrote Daniel:

> Enclosed please find a Residual Functional Capacity Evaluation for Longshoreman dated February 27, 2012 completed by Dr. Joseph Miceli. As per my telephone conversation with you today, please forward the Soc Security forms which are required of my client and a waiver of prescription extending my client's right to file court proceedings....

On April 18, 2012 McGowan sued NOE-ILA Pension Fund in this Court, to challenge the termination of his benefits pursuant to ERISA, 29 U.S.C. § 1001.[4]

---

[3]Specifically, McGowan's counsel wrote:

> By this letter, I formally request that Mr. McGowan be reevaluated by a physician employed by the Fund with regards to his continuing eligibility for disability benefits. It is my understanding that this request will be presented to the board at it's [sic] upcoming meeting which would allow time for evaluation prior to the one year limitation....

[4]Meanwhile, the Trustees held an administrative hearing on August 17, 2012, at which time a written record was developed and evidence was received from McGowan and his counsel. According to the minutes of the special "Pension Hearing", Fund Counsel

7

The defendant now seeks dismissal on the ground that McGowan failed to allege that he timely exhausted his administrative remedies; alternatively, the defendant seeks summary relief in its favor because McGowan filed his complaint without timely exhausting his administrative remedies. One day after requesting dismissal, on September 12, 2012 the Board of the Fund issued its "final decision" with respect to McGowan's request through counsel that disability benefits be continued:

> The April 20, 2011 administrative action taken by the Plan Administrator was correct. The subsequent "appeal" was untimely. Thus, the April 20, 2011 stands as conclusive and final as affirmed here by the Board of Trustees.

Also since the Fund has requested dismissal of McGowan's lawsuit and since the Board has issued its "final decision", McGowan has amended his complaint (as a matter of course) on October 1, 2012, adding allegations that he exhausted his administrative remedies and that the Board itself failed to comply with the Plan. McGowan alleges:

- on April 18, 2011 he contacted Daniel regarding the hospitalization of his child "and was confronted by Mr. Daniel with an allegation that he worked at Lowe's and therefore, should be terminated from benefits."
- on April 20, 2011 Daniel wrote McGowan, informing him that, effective April 30, 2011, he would no longer be receiving Disability Retirement pension benefit payments and retiree health insurance benefits because he was no longer disabled.
- McGowan never requested termination of his Disability Retirement benefits.

---

stated that "a formal appeal hearing was called in regard to Mr. Troy McGowan's disability retirement."

8

- on February 27, 2012 Dr. Joseph Miceli determined that McGowan was unable to perform longshoreman duties.
- the Fund wrongfully terminated the plaintiff's disability retirement and retiree health insurance benefits.
- the Board of Trustees administering the Plan issued a final decision on September 4, 2012. "In doing so the Board has followed the Plan's administrative procedure to allow Plaintiff to file this lawsuit under ERISA."
- McGowan has exhausted his administrative remedies.
- "[t]he member of the Board allegedly authorized by the Board violated its own procedure by issuing a final letter advising Plaintiff to file a suit under ERISA without affording him the opportunity to appeal to the full Board as dictated by the Plan."
- The Plan did not schedule an appeal hearing for McGowan until it was served with this lawsuit on August 3, 2012. Until this appeal hearing was scheduled, the Board had denied McGowan his appeal right by representing that the decision reflected in the first letter sent on April 20, 2012 could be submitted for judicial review by filing an ERISA lawsuit.

Notwithstanding the allegations asserted in McGowan's newly-amended complaint, the defendant maintains that dismissal or summary relief in its favor is warranted because McGowan failed to comply with the terms of the Plan, which require exhaustion of administrative remedies before filing a lawsuit.

I.
*A.*

Rule 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. Such a motion "'is viewed with disfavor and is rarely granted.'" See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

9

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1940. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted).

The United States Supreme Court suggests a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950. First, the Court must identify pleadings that are conclusory and thus not entitled to the assumption of truth. Id. A corollary: legal conclusions "must be supported by factual allegations." Id. Second, for those pleadings that are more than merely conclusory, the Court assumes the veracity of those well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement to relief." Id.

This facial plausibility standard is met when the plaintiffs

pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Claims that are merely conceivable will not survive a motion to dismiss; claims must be plausible. Twombley, 550 U.S. at 570; see also Iqbal, 129 S. Ct at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal 129 S. Ct. at 1949 (internal quotations omitted). In the end, evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiffs' claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting the motion into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan

of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).

However, if "other" matters outside the pleadings -- ones that are neither part of the pleadings nor matters of public record -- are presented to and not excluded by the Court, Rule 12(d) requires that a motion presented under Rule 12(b)(6) "must be treated as one for summary judgment under Rule 56" and that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

*B.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment

is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

The Fund requests that the Court dismiss McGowan's claim for arbitrary and capricious termination of benefits because he failed to exhaust the administrative remedies required by the Plan.[5]

ERISA gives a plan participant standing to bring a civil action "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B). Before resorting to federal litigation to recover benefits, "claimants seeking benefits from an ERISA plan

---

[5]Here, materials have been presented that go beyond the pleadings; the Court will therefore address the defendant's alternative request for summary judgment. See Fed.R.Civ.P. 12(d).

13

must first exhaust available administrative remedies under the plan." Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., 215 F.3d 475, 479 (5th Cir. 2000)(citing Denton v. First Nat'l Bank of Waco, 765 F.2d 1295, 1300 (5th Cir. 1985)). "One of the policies underlying the exhaustion requirement was Congress's desire that ERISA trustees, not federal courts, be responsible for their action so that not every ERISA action becomes a federal case." Medina v. Anthem Life Ins. Co., 983 F.2d 29, 33 (5th Cir. 1993); Denton, 765 F.2d at 1300 (nothing that the other two policies underlying the exhaustion requirement are to provide a clear record of administrative action and to ensure that judicial review is made under the arbitrary and capricious standard). The exceptions to the exhaustion requirement are limited: a claimant may be excused from the exhaustion requirement if he shows either that pursuing an administrative remedy would be futile or that he has been denied meaningful access to administrative remedies. Denton, 765 F.2d at 1302 (futility exception); Meza v. Gen. Battery Corp., 908 F.2d 1262, 1279 (5th Cir. 1990)(meaningful access exception).

The record shows that McGowan's benefits were terminated effective April 30, 2011, and that he received notification of this by letter dated April 20, 2011. Under the Plan, McGowan was required to submit a written appeal or written request for a claim review, in writing, by October 20, 2011, which was within 180 days

14

of the April 20, 2011 denial/termination of benefits letter.

The record shows that McGowan did not comply with the Plan's claim review procedures. In fact, McGowan did not submit a written request to appeal the termination of his benefits within 180 days of April 20, 2011.[6] Therefore, this lawsuit that challenges the termination of his benefits was filed without McGowan having timely exhausted the internal review procedures provided by the Plan and, thus, in contravention of the terms of the Plan. Moreover, McGowan presents no recognized excuse for his failure to exhaust: he has not suggested that exhaustion of the internal review process would have been futile, or that he was denied meaningful access to internal review.

McGowan disputes whether the April 20 letter from Mr. Daniel was a "legal" or "real" denial of benefits; he insists that the contents of the April 20 termination of benefits letter was legally inadequate such that the appeal period was never triggered. He provides no support for his argument and, even if the Court indulged him, the contents of the April 20 letter is in substantial compliance with ERISA such that the letter triggered the running of his administrative appeal period. See 29 U.S.C. § 1133;[7] see also

---

[6] McGowan has argued that he orally advised Daniel that he intended to appeal the termination of benefits. But orally acknowledging an intent to appeal does not comply with the Plan's requirement that appeals be made in writing.

[7] This provision specifies:

Lacy v. Fulbright & Jaworski, 405 F.3d 254, 256-57 (5th Cir. 2005)(holding that an initial denial notice need only be in substantial compliance with 29 U.S.C. § 1133 and the DOL Regulation § 2560.503-1 in order to trigger an ERISA appeal period).  The record shows that, by the April 20 letter, McGowan was informed that his benefits were being terminated and why, with references to the pages of the attached summary plan description book; McGowan was advised about his post-appeal rights and directed to the pages of the enclosed summary plan booklet for more information; and he was also advised about his right to file an ERISA lawsuit.  McGowan fails to persuade the Court that the letter fails to substantially comply with the statutory and regulatory notice requirements.  To the contrary, he had all of the Plan appeal procedure pinpointed for him ("[y]our post-appeal rights are set forth on pages 36-39 of

---

> In accordance with regulations of the Secretary, every employee benefit plan shall
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  As the Fifth Circuit has observed, a Department of Labor regulation adds a gloss on § 1133(1)'s notice requirement.  See Lacy, 405 F.3d at 256 (citation omitted); see also 29 C.F.R. 2560.503-1(g).

the enclosed Summary Plan Description booklet"). The April 20 letter was sufficient for the purpose of commencing the running of the period within which McGowan could have submitted an internal written appeal. It is not insignificant to add that McGowan also had the benefit of counsel.

Because he failed to lodge a timely written appeal, and has failed to show that either exception to exhaustion applies, McGowan failed to exhaust his administrative remedies under the Plan. Furthermore, any internal appeal lodged after the expiration of the 180 day deadline would be untimely under the Plan and, thus, any appeal of the termination of benefits decision is now time-barred. Accordingly, the Fund's motion for summary judgment is GRANTED; the plaintiff's claim is hereby dismissed.

New Orleans, Louisiana, October 15, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE